**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**DORI CLARK,**

      **Plaintiff,**

**v.**                                                              **Case No. 8:08-cv-781-T-TBM**

**MICHAEL J. ASTRUE,
Commissioner of the United States
Social Security Administration,**

      **Defendant.**
_____/

**O R D E R**

The Plaintiff seeks judicial review of the denial of her claim for Supplemental Security Income payments. For the reasons set out herein, the decision is affirmed.

I.

Plaintiff was forty-one years of age at the time of her administrative hearing in September 2006. She stands 5' 3" tall and weighed 140 pounds. Plaintiff has a twelfth grade education. Her past relevant work was as a cashier; a manager of a gas station, motel, and video store; and a masonry company worker. Plaintiff applied for Supplemental Security Income payments in August 2002, alleging disability as of February 2, 2001, by reason of depression, manic depression, bi-polar disorder, leg pain, back pain, kidney stones, headaches and other assorted ailments. The Plaintiff's application was denied originally and on reconsideration.

The Plaintiff, at her request, then received a *de novo* hearing before an Administrative Law Judge ("ALJ"). The Plaintiff was represented at the hearing and testified in her own behalf.[1] Additionally, a medical expert and a vocational expert were called by the ALJ.

In essence, Plaintiff claimed that she is unable to work because of pain and problems with her kidneys. Plaintiff testified that she has to "pee a lot, like every ten minutes." By her account, she goes to the bathroom eight or nine times a day for ten to twenty minutes, and her urination is painful. Plaintiff also testified that she has sharp pain in her right leg, which also hurts in the bottom of her back. In addition to this pain, her neck is always popping. Plaintiff stated that she can stand for five to ten minutes but then her legs go out. She stated further that she can sit for five minutes but it hurts in her lower back. Plaintiff said that she does not walk much because she mainly stays in her room. She also said that she is unable to lift much, and lifting the vacuum cleaner hurts her back.

Plaintiff also claimed mental difficulties. By her testimony, she has difficulty concentrating, remembering, and focusing, and she does not like working around people. According to Plaintiff, people are "nasty" and she is unable to look them in the eye. She testified she also hears voices on occasion, and she will not sit in front of a window or door for fear of being shot. Plaintiff said that she spends most of her days sitting in the dark and

---

[1]As the decision reflects, Plaintiff's case was scheduled for hearing on four separate occasions. She appeared and testified only at the hearing in September 2006. During an earlier hearing, the ALJ and her representative took evidence from a medical expert and a vocational expert in her absence. The vocational expert also appeared and testified at the September 2006 hearing. The discussion above combines the testimony from all hearings.

2

she nods off.  At night, she is unable to sleep because she is scared.  She indicated that she has been diagnosed with bipolar disorder, manic depression, and schizophrenia.  She has an anger issue and fights a lot.  She stated that if someone gets in her face, she will punch them out, and she once was fired when she slammed her boss's arm in a door.  She has a history of criminal battery offenses.  Plaintiff denied use of any drugs, but conceded that she had consumed alcohol excessively at times in the past.  She denied using alcohol during the past year.  She used to take a lot of Tylenol PM but stopped because of damage to her liver.  She has tried to commit suicide in the past.  (R. 1100-1119).

The ALJ twice took testimony from Joyce Courtright, a vocational expert ("VE"). At the September hearing, she testified on an assumption of an individual of Plaintiff's age, education, and work experience, capable of light work and allowing for frequent climbing, balancing, stooping, crouching, kneeling, and crawling, but only occasional interaction with the public. On this assumption, the VE confirmed her prior testimony that none of Plaintiff's past work would be available because of the limitation regarding interaction.  However, the witness also confirmed her prior testimony that even with such limitations, the individual could perform the work of small parts assembly, machine tender, and merchandise marking. If the hypothetical was altered to assume the individual was limited to unskilled work with no detailed or complex work and minimal interaction with co-workers and the public, the VE indicated such person could still perform these latter jobs.  If it was further assumed that such individual suffered from kidney problems and needed to use the restroom at will and frequently beyond scheduled breaks, no jobs would be available.  On questioning by Plaintiff's counsel, the VE testified that if such individual had limitations of pushing and

pulling in the lower extremities, the assembly and merchandise marking jobs would not be an issue, however, the machine tending would be affected. On an additional assumption that such person had moderate limitations in the ability to accept instructions with jobs requiring tolerances, the VE opined that 40% of the jobs she identified would be eliminated. If such individual had marked limitations in the ability to complete a normal work day and to accept instruction, none of these jobs would be available. (R. 1119-1127).

The ALJ also took testimony from Michael Eastridge, a licensed psychologist. Dr. Eastridge was called as a medical expert and he testified that he had reviewed the file and formed certain opinions regarding Plaintiff's mental impairments. By his summary of the medical evidence, Plaintiff suffered from an affective disorder that had been diagnosed variously as bipolar; affective disorder, both with and without psychosis; depression; substance-induced mood disorder, acute; acute depression; and dysthymia. The witness opined that Plaintiff also has a personality disorder that has been diagnosed as an intermittent explosive disorder and a borderline personality disorder. By his review, the records reflect a consistent diagnosis of alcohol dependence and cocaine dependence. By the witness's opinion, at no point in time in the medical record was there a sustained period when alcohol or cocaine use did not affect Plaintiff's mental functioning. By his account, the affective disorder present is largely reactive to the use of alcohol and cocaine, and the borderline personality disorder would be present whether or not there was alcohol or cocaine abuse. In examining her mental functioning, the witness opined that Plaintiff's ability to maintain social functioning was variable because of her substance abuse. He opined that the impairment generally was mild to moderate with episodes of marked impairment. He further opined that

there was mild impairment of activities of daily living and her mental state would occasionally interfere with her concentration, persistence, or pace. In other words, the impairment would be slight to moderate, with episodes of marked impairment due to substance abuse. By his review, there were more than three documented episodes of deterioration, though not necessarily at work. Marked limitations related to drug and alcohol abuse first appeared in September 2001. By the witness's opinion, during periods when Plaintiff was mild to moderately impaired, she would still maintain anxiety, have difficulty with authority, have significant conflict with other people by reason of her personality disorder, and have mild problems with memory recall, attention and focus. Asked about inconsistencies in the records, he questioned a diagnoses of intermittent explosive disorder believing the report suggests that the conduct was more consistent with a borderline personality disorder. He also opined that Plaintiff had taken enough pain medicine that it would make it difficult to overcome her polysubstance dependence.

On questioning by Plaintiff's representative about a report from the Harbor in August 2004 in which Plaintiff was diagnosed with bipolar, depressed, with psychotic features and a low GAF, the witness agreed that such diagnosis would significantly interfere with a person's ability to work successfully. However, the witness indicated that he did not believe the diagnosis of psychosis was correct based on his review of the record and a formal psychological evaluation. (R. 1137-1144).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are set forth herein as necessary.

By her decision of February 16, 2007, the ALJ determined that Plaintiff has severe impairments related to cervical and lumbar strains; history of right ankle dislocation and fracture of toes on left foot, status post surgeries; recurrent kidney stones; affective disorder variously diagnosed as bipolar disorder with and without psychosis, major depressive disorder, substance induced rude disorder, and dysthymia; personality disorder variously diagnosed as intermittent explosive disorder and borderline personality disorder; and polysubstance abuse/dependence (alcohol and cocaine). These impairments, including the substance abuse disorder(s), met the criteria for the Listings at sections 12.04, 12.08, and 12.09. Assuming Plaintiff stopped her substance abuse, the ALJ found that she would suffer severe impairments, but in the absence of her substance abuse, none would meet or equal a listed impairment and Plaintiff would be capable of performing a limited range of light work. Given this finding and the testimony of the VE, the ALJ found that, if Plaintiff stopped her substance abuse, she would be capable of performing work such as a small products assembler, machine tender, and merchandise marker. Accordingly, the ALJ concluded that her substance use disorder(s) was a contributing factor material to the disability determination and Plaintiff was not disabled within the meaning of the Act. (R. 14-25). The Appeals Council denied Plaintiff's request for review.

II.

In order to be entitled to Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last

for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that

7

the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

III.

The Plaintiff raises two claims on this appeal. As stated by the Plaintiff, they are as follows:

(1) The Commissioner failed to find that Plaintiff's conditions of hydronephrosis, frequent urinary tract infections, and hydroureter were severe impairments; and

(2) The Administrative Law Judge did not properly evaluate the Plaintiff's complaints of intermittent flank pain and frequent urination under the applicable Eleventh Circuit pain standard.

By her first claim, Plaintiff urges that the ALJ overlooked certain severe impairments and failed to properly credit her subjective complaints related to such impairments. She urges that the case should be reversed and remanded for further consideration of the functional impact of the impairments. More particularly, Plaintiff urges that she suffers severe impairments related to hydronephrosis, urinary tract infections, and hydroureter. By her account, each of these conditions is diagnosed in the medical record yet the ALJ failed to credit such conditions as severe impairments at step two of the five step

8

sequential evaluation process. She suggests that these conditions fully support her claims at the hearing that she has to urinate frequently throughout the day, when she goes to urinate she has difficulty doing so, and it takes ten to twenty minutes and is painful on each occasion. She urges that the ALJ failed to address her underlying medical condition that would support such symptoms and found instead that she was not fully credible without adequately indicating why. By her argument, there was no reason to discount the claims of difficult and frequent urination or for her to exaggerate these claims. (Doc. 24 at 6-11).

In response, the Commissioner argues that Plaintiff's argument is without merit because the ALJ found that she had at least one severe impairment, which is all that is required at step two of the sequential evaluation. The Commissioner also argues that the ALJ adequately considered and addressed Plaintiff's subjective complaints of pain and set forth numerous reasons why the same was not credible, particularly as related to her testimony concerning frequent urination. In sum, the Commissioner urges that the ALJ gave ample reasons for concluding that if Plaintiff stopped her substance abuse, her symptoms would not prevent her from performing work available in the national economy. (Doc. 25 at 5-11).

The Social Security Regulations set forth a five-step sequential evaluation process the Commissioner must follow in determining whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of establishing a *prima facie* case of disability at steps one through four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1241 n.10 (11th Cir. 2004). At step two of this five-step evaluation process, the ALJ is called upon to determine whether a claimant's impairments are severe. 20 C.F.R. § 416.920. Under this regulation, if the claimant does not have an impairment or combination of impairments which

significantly limits her ability to do basic work activities, then she is not disabled.[2] In application, this inquiry is a "threshold" inquiry. It allows only claims based on the slightest abnormality to be rejected. *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984). An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. *Id.* A "[c]laimant need show only that her impairment is not so slight and its effect not so minimal." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).

Here, even if Plaintiff is correct and she suffers severe impairments related to her hydronephrosis, urinary tract infections, and hydroureter, there is no error requiring remand at step two of the evaluation process. As the decision reflects, the ALJ credited Plaintiff with a number of severe impairments. That is all the ALJ is required to do at this step. *See Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (noting that, ". . . the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement at step two.). However, the failure to properly recognize and consider all impairments and functional limitations arising therefrom can be problematic

---

[2]The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987) (citing 20 C.F.R. §§ 404.1521(b), 416.921(b)). Basic work activities include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling, as well as capacities for seeing, hearing, and speaking; understanding, remembering and carrying out simple instructions; responding appropriately to supervisors and fellow employees and dealing with changes in the work setting; and the use of judgment. *Id.*

10

at steps four and five of the sequential evaluation process. At step four, the claimant must show that her impairment or combination of impairments prevents her from performing her past work. If the claimant successfully meets this burden, the burden of proof shifts to the Commissioner at step five to show that the claimant retains the residual functional capacity to perform work in the national economy, given her age, education, and work experience. 20 C.F.R. § 416.920(a)(4). Here, as the decision reflects, the ALJ made the disability determination at step five. The failure at that step to consider all of a claimant's functional impairments would require a remand unless the same were properly discounted.[3] In any event, there is no error at step two requiring a remand in this case.

By her second claim, Plaintiff urges that despite evidence that she suffered from hydronephrosis, frequent urinary tract infections, and hydroureter, the symptoms arising from these conditions were not properly considered under the applicable standard. More particularly, Plaintiff complains that the ALJ failed to address whether she had a medical condition which could reasonably cause the urinary frequency, urgency, and flank pain she complained of and that, to the extent that the ALJ found her testimony about urinary

---

[3]Contrary to Plaintiff's suggestions, the ALJ did not ignore her complaints regarding her kidneys and urinary tract problems. The decision fairly recounts Plaintiff's "urinary impairment," noting Plaintiff's care for renal colic, kidney stones and related left flank pain, hydronephrosis, and urinary tract infections. (R. 18). After reviewing the medical evidence, the ALJ noted that, "while claimant has a 'severe' pattern of recurring kidney stones, her noncompliance is an issue that will be addressed in further detail below." *Id*. Further on, the ALJ noted that Plaintiff's kidney condition was not a listings level impairment and "has been greatly exacerbated by her noncompliance." (R. 22). Ultimately, in discounting Plaintiff's subjective complaints, the ALJ again noted that her noncompliant behavior and drug seeking ways substantially undermined the claimed severity of her kidney condition. (R. 23). My independent review of these medical reports also suggests that when Plaintiff was compliant with treatment, her condition improved and her pain dissipated.

11

frequency less than fully credible, the reasons given in support of the conclusion are speculative and inconsistent. (Doc. 24 at 11-14).

The Commissioner counters that the ALJ properly evaluated Plaintiff's subjective complaints of pain and other symptoms in accordance with governing authority and provided numerous reasons in support of his evaluation. Additionally, the Commissioner contends that substantial evidence supports the ALJ's credibility finding and assessment of Plaintiff's functional capacity. (Doc. 25 at 8-14).

In this circuit, subjective complaints such as pain, fatigue or dizziness are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms. By this standard, there must be evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged symptom arising from the condition or evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). A claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability. *Id.*; *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). If the ALJ determines not to credit subjective testimony, he must articulate explicit and adequate reasons for his decision. *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995); *Jones v. Dep't of Health & Human Servs.*, 941 .2d 1529, 1532 (11th Cir. 1991). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *See*

*Hale*, 831 F.2d at 1012. Proper application of the regulatory standard will satisfy this circuit's pain standard. *See Wilson,* 284 F.3d at 1226.

By my consideration, the ALJ adequately addressed the Plaintiff's subjective complaints about her "urinary impairment." When considered as a whole, the ALJ credited Plaintiff with a collection of urinary tract conditions reflected in the medical record and a "severe" pattern of recurring kidney stones. However, such was not of listing level severity and would not prevent her from performing a limited range of light work. In reaching this conclusion, the ALJ considered Plaintiff's assorted subjective complaints under the applicable standard and specifically cited, among many subjective complaints of pain, the need to use the bathroom frequently in a typical day. Thus, the ALJ credited Plaintiff with conditions that reasonably could give rise to her symptoms. However, he found, in pertinent part, that Plaintiff's "kidney condition" was greatly exacerbated by her noncompliance with treatment, as reflected by the notes from treating doctors, and this noncompliant behavior undermined her credibility with respect to the severity of the symptoms alleged. For this and several other stated reasons, the ALJ concluded that, "[i]n short, the claimant is not a very credible witness, and her testimony as to pain, symptoms, and limitations are given little weight." (R. 23). Upon my review, when the decision is read as a whole, the ALJ fairly assessed the Plaintiff's subjective complaints including those related to her "urinary impairment" and her pain. Under the applicable standard, the ALJ may discount such subjective complaints by stating adequate reasons. Here, I conclude that the ALJ has done so.

Lastly, to the extent Plaintiff's arguments may be construed as challenging the ALJ's determination that alcohol and/or drug addiction was a contributing factor material to the

13

determination of whether Plaintiff was disabled, I find that any such argument fails.[4]  In 1996, Congress amended the statutory definition of disability under the Social Security Act to preclude the award of benefits when alcoholism or drug addiction is determined to be a contributing factor material to the determination that a claimant is disabled.  *See* Pub. L. No. 104-121 § 105; 42 U.S.C. § 423(d)(2).  The regulations thereunder describe how to determine whether the claimant's drug addiction or alcoholism is a contributing factor material to the determination of disability.  According to the regulations:

> (b)(1) The key factor . . . in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.
>
> (b)(2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we base our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.
>
>> (i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.
>>
>> (ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

---

[4] I do not read Plaintiff's Memorandum as raising this issue.  However, the issue is addressed in brief out of an abundance of caution.

20 C.F.R. § 416.935(b). In this circuit, the claimant bears the burden of proving her substance abuse was not a contributing factor material to a finding of disability. Stated otherwise, the Plaintiff bears the burden of proving she would be disabled if she stopped using drugs and alcohol. *Doughty v. Apfel*, 245 F.3d 1274 (11th Cir. 2001).

Here, the ALJ employed the proper analysis under this regulation. Plaintiff makes no argument that her substance abuse was not a contributing factor material to a finding of disability. Clearly, on this record, it was. Accordingly, for the reasons set forth above, Plaintiff is not disabled within the meaning of the Act.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence. The decision is affirmed. Accordingly, the Clerk is directed to enter Judgment in favor of the Defendant and to close the case.

**Done and Ordered** at Tampa, Florida, this 1st day of July 2009.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record